IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| EMME RIBEIRO COLLINS and HELEN JONES,<br><br>　　　　　　　　Plaintiffs,<br><br>vs.<br><br>SEATTLE PUBLIC SCHOOLS and AARON SMITH, and his marital community,<br><br>　　　　　　　　Defendants. | No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>Demand for Jury Trial |

COMES NOW Plaintiffs by and through their attorneys, Daniel C. Gallagher of Gallagher Law Office PS and Rachel Anyan of Anyan Legal Services, LLC, and allege the following:

## I.   PARTIES

1.1   Plaintiff EMME RIBEIRO COLLINS (hereinafter, "Plaintiff Collins") brings this action on behalf of herself. At all relevant times to this Complaint, she was a resident of King County, Washington.

COMPLAINT FOR DAMAGES - 1

1.2     Plaintiff HELEN JONES (hereinafter, "Plaintiff Jones") brings this action on behalf of herself. At all relevant times to this Complaint, she was a resident of King County, Washington.

1.3     Defendant SEATTLE PUBLIC SCHOOLS is a public school district located in Seattle, King County, Washington.

1.4     Defendant SEATTLE PUBLIC SCHOOLS (hereinafter, "SPS") employed PLAINTIFF COLLINS as the District Executive Chef from September 2019 until May 2023.

1.5     Defendant SPS employed PLAINTIFF JONES as Operations Manager in Culinary Services. She was employed by SPS from 1998 until May 2023.

1.6     Defendant AARON SMITH (hereinafter, "Defendant Smith") was, at all times relevant to this Complaint, employed as Director of Culinary Services and, upon information and belief, is a resident of King County, Washington.

## II. JURISDICTION AND VENUE

2.1.    <u>Jurisdiction</u>. The relevant acts and omissions alleged took place in King County, Washington. This Court has jurisdiction over this matter pursuant to RCW 2.08.010.

2.2.    <u>Venue</u>. Venue is proper in King County pursuant to RCW 4.12.020.

## III. FACTS REGARDING PLAINTIFF COLLINS' CLAIMS

3.1.    Plaintiff Collins began working for SPS on or about September 2019 as the District Executive Chef. Her direct supervisor was Defendant Smith.

3.2.    In May 2022, Plaintiff Collins was presented with a re-organization of the Culinary Services department, which indicated she would oversee two 260 supervisors who would be promoted to the Program Manager position under Plaintiff Collins. On or about May 4, 2022, Defendant Smith asked Plaintiff Collins if she would agree to the terms of the re-organization to which she stated she would agree if the other employees were also in agreement.

COMPLAINT FOR DAMAGES - 2

GALLAGHER LAW OFFICE PS
10611 Battle Point Drive NE
Bainbridge Island, Washington 98110-1493
206.855-9310

3.3. On or about July 27-30, 2022, Plaintiff Collins went on a work trip with Defendant Smith and others to Monterey, California, (hereinafter, the "Monterey trip") where Defendant Smith pressured Plaintiff Collins throughout the entire weekend to drink alcohol during various vendor-sponsored events, including the welcome reception, convention, and a farm event despite Plaintiff Collins reiterating every time that she did not want to drink. During a dinner with a produce vendor, the vendor received an email from the city and asked Defendant Smith for clarification regarding the email to which Defendant Smith responded that Plaintiff Collins could provide more information. However, Plaintiff Collins responded that she was not part of that program (Fresh Fruit and Vegetable Program "FFVP") at which point Defendant Smith began scowling at Plaintiff Collins.

3.4. Defendant Smith's behavior toward Plaintiff Collins made both the vendor and Plaintiff Collins very uncomfortable. The vendor turned toward Defendant Smith and said, "What is all of this, what are you doing? What is going on?" The vendor then requested an Uber for Plaintiff Collins to leave the dinner early due to Defendant Smith's behavior. Plaintiff Collins felt humiliated and threatened by Defendant Smith's behavior.

3.5. During the Monterey trip, Plaintiff Collins asked Defendant Smith about the proposed re-organization that was discussed in May 2022, to which Defendant Smith responded that there was a meeting that just happened or was going to happen that would determine if the re-organization was going through or not.

3.6. The following Monday after returning from the Monterey trip, Plaintiff Collins requested a meeting with Defendant Smith to discuss how he made her feel uncomfortable during the weekend trip. Defendant Smith apologized for his behavior. However, after this meeting discussing Plaintiff Collins' complaint, Defendant Smith began targeting Plaintiff Collins and treating her differently from her coworkers.

3.7. On or about August 2, 2022, Defendant Smith met with Plaintiff Collins and informed her that she would now be overseeing the Fresh Fruit and Vegetable Program ("FFVP") and that she had committed to that responsibility even though she had not. Plaintiff

COMPLAINT FOR DAMAGES - 3

Collins expressed concerns with the lack of organization and communication within the department. She also expressed concern that other employees were not performing their work and asked if employees could come to him for support in holding others accountable for not performing their work to which Defendant Smith responded, "No." Instead, he told Plaintiff Collins that she had two options: "pick up the undone work or let it fail." Plaintiff Collins asked for clarification that Defendant Smith was not providing a third option, which would be going to an employee's supervisor for support in holding his direct reports accountable and he reiterated that there were only the two options. Plaintiff Collins then explained her disappointment in the lack of leadership and management and the lack of holding people accountable.

3.8. After the meeting with Plaintiff Collins, Defendant Smith called in Plaintiff Collins' coworkers and informed them that an anonymous complaint had been made on their behalf. He informed the other two coworkers that, if they were having to complete other employees' work, then they could come to him for support and he would hold those other employees accountable.

3.9. On or about August 4, 2022, Plaintiff Collins learned from her coworker that the re-organization presented to the other coworker no longer included Plaintiff Collins receiving a promotion as detailed in the original proposed re-organization that she received agreed to on May 4, 2022. She was told that her position would stay the same and only the other employees she was supposed to oversee would be receiving their promotions.

3.10. After Plaintiff Collins' initial complaint to Defendant Smith about the Monterey trip, Defendant Smith told employees within their department that Plaintiff Collins would only be working in their department for a few years.

3.11. In the summer of 2022, Plaintiff Collins became aware of an article that would be published in *Seattle's Child* magazine. She had not been collaborating on the article up to that point but responded to the journalist's inquiries. Subsequently, she was informed of a scheduled photo shoot for the magazine. When she arrived for the photoshoot, Defendant Smith

COMPLAINT FOR DAMAGES - 4

was already having photos taken. Plaintiff Collins posed with Defendant Smith for some joint photos and had her own separate photos taken. When she left the photoshoot, Defendant Smith was still having his own photos taken. When the magazine was published, Plaintiff Collins was unexpectedly on the cover. Multiple copies were displayed at their department's reception desk and a colleague informed Plaintiff Collins that all of the magazines were deliberately turned face down.

3.12. On or about October 17, 2022, Plaintiff Collins had a one-on-one meeting with Defendant Smith at which point she addressed the tension and troubled working relationship since the Monterey trip. Defendant Smith responded that Plaintiff Collins didn't need to do anything and that it was Defendant Smith who needed to work on the communication issue on his end.

3.13. On or about November 1, 2022, Defendant Smith sent an email to the culinary team indicating that Plaintiff Collins' coworkers would be presenting a webinar regarding the Culturally Inclusive School Meals, which was centered on menu items that Plaintiff Collins created and an implementation strategy that she had developed. Defendant Smith assigned this task to Plaintiff Collins' coworkers despite it not being part of their job duties and without any assistance or help from Plaintiff Collins even though it was her work product. Plaintiff Collins' coworkers were aware that Plaintiff Collins was not part of the webinar and were informed that Defendant Smith made that decision to exclude Plaintiff Collins.

3.14. Shortly after the webinar, Defendant Smith authored an article titled, "District Spotlight" that was published in a national magazine, *Served*, that discussed the Culturally Inclusive School Meals program, but did not mention Plaintiff Collins' name. Instead, Plaintiff Collins' coworkers were given credit for the menu that Plaintiff Collins had created, which was a decision made by Defendant Smith who authored the article.

3.15. On or about November 2, 2022, Plaintiff Collins, Defendant Smith, and Plaintiff Collins' coworker went on a vendor trip to Napa, California. While on this trip, Defendant

Smith excluded, dismissed, and ignored Plaintiff Collins. He refused to answer any of her questions and turned away from her when she spoke to him.

3.16. On November 7, 2022, after returning from the Napa trip, Plaintiff Collins filed a formal retaliation claim against Defendant Smith.

3.17. On or about December 21, 2022, Defendant Smith sent Plaintiff Collins and her coworker an email about addressing supply chain workflow and indicated that there were problems and that they needed to come up with solutions. He refused to provide details about what the problems were that needed to be addressed and, instead threatened that if the unknown issues were not addressed, then he would be making "operational changes this summer" to which Plaintiff Collins felt was a threat.

3.18. Prior to sending the email on December 21, 2022, Defendant Smith had met with the other coworker to whom the email was addressed and informed her that he was going to send an email that was going to "piss some people off." Defendant Smith did not have a similar meeting to give Plaintiff Collins the same heads-up.

3.19. In response to the December 21, 2022 email, Plaintiff Collins responded indicating that the team previously had a meeting on this topic and laid out all of the decisions that had been made to address the very issue raised by Defendant Smith. Defendant Smith did not respond to Plaintiff Collins' email and refused to meet with her to discuss the email, insisting that she come up with solutions before he would agree to meet.

3.20. In December 2022, Defendant Smith had canceled all weekly one-on-one meetings with Plaintiff Collins without any explanation.

3.21. Plaintiff Collins took medical leave due to the hostile work environment in January 2023 and returned in April 2023. Shortly after she went out on leave, Defendant Smith held a meeting with the culinary team in which he told Plaintiff Collins' coworkers that the ordering for Central Kitchen and the food inventory was "a mess" and that there was "way too much food." Plaintiff Collins had been responsible for food ordering before she went out on leave. However, Defendant Smith had changed the way she could order food and required her

to only order food in bulk, which caused food storage issues at Central Kitchen. She had explained the issue to him prior to going on leave.

3.22. While Plaintiff was out on leave, Defendant Smith made an organizational chart for the Culinary Services team that did not include Plaintiff Collins. Plaintiff Collins had never indicated that she did not intend to return from her leave.

3.23. When Defendant Smith was informed that Plaintiff Collins was returning from medical leave, he told Plaintiff Collins' coworkers that they would continue to perform Plaintiff Collins' job duties they had been covering while she was out and that they would continue to receive the temporary pay increases they received for completing her work despite her being back from leave. He told Plaintiff Collins' coworkers that he would send out an email with instructions on transitioning Plaintiff Collins' job duties back to her but never sent the email.

3.24. Defendant Smith also created a new "menu team" while Plaintiff Collins was out on leave even though Plaintiff Collins, as the head chef, was the only team member who created new menu items.

3.25. On or about March 1, 2023, Defendant Smith sent an email to the Culinary Services team indicating that he made a procedural change regarding how the team credit card would be stored and checked out, but Plaintiff Collins was the only team member left off the email. Plaintiff Collins used the card the most because she did most of the ordering. When she returned from leave, she was not informed of the procedural change until she needed to use the card. He blamed the procedural change on Plaintiff Collins, claiming she had made an unauthorized purchase for a team meeting in August 2022 that Defendant Smith admitted he authorized.

3.26. Despite receiving exceptional job performances for the three years that Plaintiff Collins was in her position, Defendant Smith prepared a training document to give her when she returned from leave. The training document was not presented to Plaintiff Collins because the Executive Director of Operations told him not to implement the training.

3.27. While out on leave, Plaintiff Collins emailed the Executive Director of Operations, Marni Campbell, and HR stating that she would need their support when she returned from leave as she feared that she would continue to be subjected to Defendant Smith's behavior when she returned. She continued to provide constant emails detailing the bullying and harassment throughout April and May 2023 without any support from Marni Campbell or Human Resources.

3.28. On or about April 11, 2023, Plaintiff Collins met with Defendant Smith. During that meeting, Defendant Smith told Plaintiff Collins that she had been ordering too much food for the Central Kitchen, they had not ordered any food while she was out on leave, and that the problem needed to be fixed. Plaintiff Collins responded that she had raised this issue with Defendant Smith before and it was a problem created by his changes in the ordering system he had created the prior year.

3.29. In May 2023, Defendant Smith closed the deli at the District office that Plaintiff Collins managed without speaking with her or the coordinator of the deli beforehand. Defendant Smith also closed the Catering Services that same month, which Plaintiff Collins also supervised. He did not discuss his decision with Plaintiff Collins before closing the Catering Services. However, Defendant Smith completed a catering job himself with other team members after he closed down the Catering Services that Plaintiff Collins supervised. Defendant Smith indicated that Catering Services was having issues with the new procedure he implemented regarding the team credit card, so he decided to close it down even though it was his process change that was causing issues.

3.30. Due to Defendant Smith's hostility and targeted retaliation against Plaintiff Collins without any support from the district despite her consistent requests, she tendered her resignation to SPS in May 2023.

3.31. On or about December 8, 2023, more than a year after filing the retaliation claim, an HR investigator on behalf of SPS authored an investigative report with a findings of fact section corroborating Plaintiff Collins' complaints.

## IV. FACTS REGARDING PLAINTIFF HELEN JONES' CLAIMS

4.1     Plaintiff Jones began working for SPS in 1998. She became the Culinary Services Operations Manager at SPS in 2019. In her position as Culinary Services Operations Manager, she was second-in-command to Defendant Smith.

4.2     While working in her role as Operations Manager, Plaintiff Jones witnessed Defendant Smith retaliate and bully his Senior Administrative Assistant in 2021. In April 2021, Defendant Smith approached several team members, including Plaintiff Jones, and requested that they provide negative comments about his Senior Administrative Assistant. Plaintiff Jones refused to do so. Thereafter, Defendant Smith stopped talking to Plaintiff Jones, refused to respond to her emails or otherwise communicate with her despite her position being second-in-command.

4.3     In February 2022, Plaintiff Jones spoke with Frank Griffin, Director of Facilities Services, regarding her difficulties with Defendant Smith ignoring her and refusing to offer training and guidance.

4.4     Despite reporting her concerns to Mr. Griffin, Defendant Smith began dispersing Plaintiff Jones' work responsibilities to other team members in March 2022 without informing Plaintiff Jones. Plaintiff Jones continued to request clarification regarding her job duties from Defendant Smith with no response.

4.5     Throughout the summer of 2022, Plaintiff Jones met with several SPS employees about her working relationship with Defendant Smith, including the Class & Compensation Manager, former Employment Services Manager, and Senior Human Resource Analyst in Labor Relations.

4.6     On or about September 2, 2022, Plaintiff Jones met with Fred Podesta, Chief Operations Officer, regarding her working relationship with Defendant Smith. She informed him that Defendant Smith was failing to communicate with her, would not respond to her emails, and was attacking her character with other team members, which was affecting her

ability to work with her team. With no change in how Defendant Smith treated Plaintiff Jones despite her conversation with Mr. Podesta, Plaintiff Jones was forced to go on medical leave in September 2022.

4.7     Plaintiff Jones returned to work on or about December 5, 2022. The day she returned to work, she met with Defendant Smith and another coworker to review the HR, payroll, and budget process. During that meeting, she received new responsibilities for her position. When she attempted to ask questions about the additional duties and responsibilities, Defendant Smith sat silently staring at her and provided no additional guidance. She asked if she could schedule orientations on Mondays, which was when they were scheduled prior to her medical leave. However, Defendant Smith was adamant that orientation had to be held on Thursdays without giving any reason.

4.8     On or about December 6, 2022, Plaintiff Jones received approval for an ADA accommodation request she had submitted to work from home three days a week until March 5, 2023. When Defendant Smith learned of the approval, he quickly had a meeting with the Leave Desk Analyst and changed Plaintiff Jones' requested days for working in the office even though the previous request had already been approved. Specifically, he changed the orientation day from Thursday to Tuesdays, despite his previous insistence that orientation had to be on Thursdays. Additionally, she was told that she needed to be in the office on Mondays to process invoices, which was previously the Data Analyst's responsibility, not Plaintiff Jones'.

4.9     On or about December 12, 2022, Plaintiff Jones filed a formal retaliation claim against Defendant Smith with Defendant SPS regarding his ongoing lack of support, bullying, and intimidation behavior.

4.10    On or about December 16, 2022, during a one-on-one meeting with Defendant Smith, he insisted that she would need to come into the office to make up for the four upcoming holidays that fell on Mondays and Fridays despite her approved ADA accommodation.

COMPLAINT FOR DAMAGES - 10

GALLAGHER LAW OFFICE PS
10611 Battle Point Drive NE
Bainbridge Island, Washington 98110-1493
206.855-9310

4.11 On or about February 20, 2023, Plaintiff Jones spoke with Superintendent Brent Jones about Defendant Smith overloading her with work, including responsibilities of other team members, with no additional training, guidance, and support. Specifically, she expressed concern that he was setting her up for failure to force her out.

4.12 On or about March 17, 2023, Plaintiff Jones received a letter from Defendant SPS indicating that they were not going to investigate her retaliation claim further and directed her to speak with Marni Campbell about her concerns.

4.13 On or about April 8, 2023, Plaintiff Jones met with Marni Campbell to discuss her concerns about Defendant Smith. Ms. Campbell asked Plaintiff Jones if she had talked to Defendant Smith about her concerns, to which Plaintiff Jones responded that Defendant Smith was non-communicative and whenever Plaintiff Jones attempted to initiate a conversation with him, he was dismissive, unavailable, and, at times, would simply walk away from her.

4.14 Two days after Plaintiff Jones' meeting with Ms. Campbell, she received an informal performance plan from Defendant Smith via email, titled "Operations Manager Job Expectations." The informal performance plan indicated that while she was out on medical leave, the department identified several instances of improper use of district funds based on changes in processes and procedures that were implemented prior to Plaintiff Jones' returning from leave. Despite former good performance evaluations and Plaintiff Jones requesting clarification and assistance on the new responsibilities, processes, and procedures upon returning from leave, the letter stated that she needed to make significant progress to attain satisfactory standing. Plaintiff Jones disagreed with the claims made in the informal performance plan and requested Defendant Smith provide proof of his claims. However, she received no response and Defendant Smith refused to meet with Plaintiff Jones to discuss the accusations. During their weekly meetings, Plaintiff Jones would ask for clarification on why she was being assigned other team members' responsibilities. Defendant Smith would respond with vague answers, would start typing on his computer and ignoring her, or would just simply shorten the meeting and leave his office.

4.15    On or about May 12, 2023, due to the harassment, bullying, discrimination, and retaliatory behavior she experienced directly from Defendant Smith, Plaintiff Jones was forced to resign from her position after over twenty-four years with Defendant SPS.

## V.    FIRST CAUSE OF ACTION: RETALIATION UNDER TITLE VII

5.1.    Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as though set forth in full.

5.2.    Defendant Smith's conduct toward Plaintiff Collins changed after she complained about his hostile behavior toward her during the Monterey work trip in July 2022. Her complaint regarding his behavior was a protected activity under Title VII. The targeted changes in Plaintiff Collins' job duties constitute retaliation, including excluding her from a presentation on a menu she created, closing the deli and the Catering Services, giving other coworkers her work tasks, changing the credit card procedure that directly impacted her ability to perform her job duties (which Defendant Smith later used to justify closing the deli), and threatening her job if she did not come up with solutions to unknown and vague issues that he refused to clarify.

5.3.    Defendant Smith's conduct toward Plaintiff Jones changed after she refused to provide negative information concerning his Senior Administrative Assistant. She complained to several employees regarding his behavior in the hopes that Defendant SPS would protect her from the targeted bullying. Her complaints were protected activities under Title VII. The targeted changes in Plaintiff Jones' job duties and responsibilities constitute retaliation, including assigning her tasks meant to be performed by others without adequate training and support, fabricating claims about her job performance, and providing a negative performance review when past reviews showed she exceeded expectations in many categories.

5.4.    As Defendant Smith's employer, Defendant SPS is vicariously liable for Defendant Smith's conduct and retaliation.

5.5.    Plaintiffs suffered, and continue to suffer, damages in an amount to be determined at trial.

## VI. SECOND CAUSE OF ACTION: RETALIATION UNDER FMLA

6.1. Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as though set forth in full.

6.2. The Family and Medical Leave Act prohibits employers from retaliating against employees who exercised their right to take medical leave.

6.3. While Plaintiff Collins was out on medical leave, Defendant Smith re-assigned her job duties to her coworkers with no intent of transferring the duties back to Plaintiff Collins when she returned from leave.

6.4. Defendant Smith also created an organizational chart for the Culinary Services team while Plaintiff Collins was out on medical leave that did not include Plaintiff Collins even though she made no indication that she did not intend to return from leave.

6.5. After Plaintiff Collins returned from leave, Defendant Smith closed the deli and Catering Services, which were supervised by Plaintiff Collins, effectively reducing her work duties. Additionally, Plaintiff Collins was excluded from a process change email that directly affected her job performance.

6.6. After returning from medical leave, Defendant Smith retaliated against Plaintiff Jones by making changes to policies, procedures, and her job duties without providing adequate support, training, or guidance on the changes. This was done to set her up for failure.

6.7. Despite previous good performance evaluations, Defendant Smith alleged that various errors were identified while Plaintiff Jones was out on medical leave and she was subsequently given a negative performance evaluation after returning from leave outside the normal cycle of annual performance evaluations. The timing and context of the negative performance evaluation is retaliation for Plaintiff Jones exercising her right under the FMLA to take medical leave.

6.8. As Defendant Smith's employer, Defendant SPS is vicariously liable for Defendant Smith's conduct and retaliation.

6.9.    Plaintiffs suffered, and continue to suffer, damages in an amount to be determined at trial.

## VII.   THIRD CAUSE OF ACTION: RETALIATION UNDER FLA

7.1    Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as though set forth in full.

7.2    The Washington State Family Leave Act prohibits employers from discriminating against employees who exercise their right to take family leave.

7.3    Defendants violated Washington State's FLA by discriminating against Plaintiffs after they took her lawful leave. As a result, Plaintiffs suffered, and continue to suffer, damages in an amount to be determined at trial.

## VIII. FOURTH CAUSE OF ACTION: RETALIATION UNDER TITLE V (ADA)

8.1    Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as though set forth in full.

8.2    Title V of the Americans with Disabilities Act (ADA) prohibits an employer from retaliating against an employee for requesting a reasonable accommodation under the ADA.

8.3    Defendants violated the ADA when Defendant Smith retaliated against Plaintiff Jones after she requested reasonable accommodation to work from home and after Defendant SPS initially approved the request. Defendant Smith retaliated by changing Plaintiff Jones' job responsibilities, including assigning responsibilities of team members that he claimed required Plaintiff Jones to be in the office on one of her requested and approved days to work from home. He further retaliated against her by requiring her to "make up" days in the office that landed on holidays despite no expectation that she would be working on those days given it was a paid holiday.

## IX. FIFTH CAUSE OF ACTION: NEGLIGENT RETENTION

9.1    Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as though set forth in full.

COMPLAINT FOR DAMAGES - 14

9.2   Defendant SPS negligently retained Defendant Smith despite his conduct toward Plaintiffs and others in the department spanning several years and despite a union no-confidence vote. As a result, Plaintiffs suffered, and continue to suffer, damages in an amount to be determined at trial.

## X.  SIXTH CAUSE OF ACTION: NEGLIGENT SUPERVISION

10.1   Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as though set forth in full.

10.2   Defendant SPS negligently failed to supervise Defendant Smith despite ongoing complaints regarding his management style, harassment, discrimination, and retaliation.

10.3   Plaintiffs suffered injuries as a result of Defendant SPS's actions and omissions.

## XI. EIGHTH CAUSE OF ACTION: RETALIATION UNDER RCW 49.60.210(1)

11.1   Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as though set forth in full.

11.2   Defendants retaliated against Plaintiff Collins due to her complaint about Defendant Smith's treatment of her at the Monterey dinner in July 2022 in violation of the Washington Law Against Discrimination, RCW 49.60.210(1).

11.3   Defendants retaliated against Plaintiff Jones due to her complaints to Fred Podesta, Frank Griffin, and Superintendent Brent Jones about the toxic environment and behaviors she endured, which was the direct result of Defendant Smith's actions and inactions.

11.4   Defendants deprived Plaintiffs of their rights and privileges under the law and they have suffered, and continue to suffer, damages in an amount to be determined at trial.

## XII. NINTH CAUSE OF ACTION: CONSTRUCTIVE DISCHARGE

12.1   Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as though set forth in full.

12.2   Plaintiffs were constructively discharged by Defendants.

12.3   Defendants have deprived Plaintiffs of their rights and privileges under the law. As a result, Plaintiffs have suffered, and continue to suffer, damages in an amount to be determined at trial.

### XIII.   RESERVATION OF RIGHTS

13.1   Plaintiffs reserve the right to assert additional claims as may be appropriate following further investigation and discovery.

### XIV.   JURY DEMAND

14.1   Plaintiffs demands that this action be tried before a jury.

### XV.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

(a)   Judgment against Defendants, jointly and severally, for Retaliation under Title VII, Retaliation under FMLA, Retaliation under ADA, Retaliation under Washington FLA, Retaliation under WLAD, and constructive discharge;

(b)   Judgment against Defendant SPS for negligent retention and supervision;

(c)   Awarding general and special damages in an amount to be proven at trial;

(d)   Awarding attorneys' fees, all costs, and statutory interest pursuant to Washington state and federal law under Title V of the ADA, VII, WLAD, FMLA, and Washington State FLA.

(e)   Awarding punitive damages under any provision of law under which punitive damages may be imposed;

(f)   Awarding pre-judgment interest on items of special damages;

(g)   Awarding post-judgment interest;

(h)   Awarding Plaintiffs such other and further relief as available and appropriate under law or at equity; and

(i)   Awarding such other and further relief the Court may deem just and proper.

///
///

COMPLAINT FOR DAMAGES - 16

Dated this 28th day of July, 2025.

                                            GALLAGHER LAW OFFICE, P.S.

By: */s/ Daniel C. Gallagher*
Daniel C. Gallagher, WSBA #21940
10611 Battle Point Drive NE
Bainbridge Island, WA 98110-1493
206.855.9310
Email: dan@nwprolaw.com

ANYAN LEGAL SERVICES, LLC

By: */s/ Rachel L. Anyan*
Rachel L. Anyan, WSBA #55252
21833 36th Ave NW
Stanwood, WA 98292
714.227.3205
Email: rachel@anyanlegalservices.com

*Attorneys for Plaintiffs*